**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

BRANDS INTERNATIONAL CORPORATION,

                        Plaintiff,

v.

REACH COMPANIES, LLC,

                        Defendant.

Civil No. 21-1026 (JRT/JFD)

**ORDER ON PARTIES' MOTIONS FOR**
**SUMMARY JUDGMENT**

---

Felicia J. Boyd and Jaime Wing, **NORTON ROSE FULBRIGHT US LLP**, 60 South Sixth Street, Suite 3100, Minneapolis, MN 55402, for Plaintiff.

Steven C. Moore and David A. Brandis, **SMITH JADIN JOHNSON, PLLC**, 7900 Xerxes Avenue South, Suite 2020, Bloomington, MN 55431, for Defendant.

Brands International Corporation ("Brands") manufacturers hand sanitizer and brought this action against distributor Reach Companies, LLC ("Reach") after Reach failed to pay Brands for hand sanitizer that Brands delivered to Reach's customer during the beginning of the COVID-19 pandemic. Reach filed several counterclaims against Brands. The case proceeded to discovery and the parties subsequently filed cross motions for summary judgment. No genuine disputes of material fact remain. Because the Court finds that Reach breached the parties' purchase agreement when it failed to pay for the hand sanitizer upon delivery to Reach's customer, the Court will grant summary judgment for Brands on the parties' competing breach of contract and breach of installment contract claims. However, because there was a valid contract between the parties,

Brands' unjust enrichment and account stated claims are barred, so the Court will grant summary judgment for Reach on those claims. The Court will also dismiss Brands' unpaid goods and services claim and Reach's tortious interference with contract claim. Lastly, the Court will award attorney's fees to Brands.

**BACKGROUND**

I.   **FACTS**

   A.   **CONTRACT FORMATION**

Brands is a Canadian company that manufactures beauty and hygiene products. (Decl. Felicia Boyd ("Boyd Decl."), Ex. 1 ("Rubinoff Dep."), at 20:2–20:17, Sep. 22, 2022, Docket No. 68.) Mark Rubinoff is the President and CEO of Brands. (*Id.* at 14:21–25.) One of the product lines that Brands manufacturers is hand sanitizer, which became one of their primary products during the beginning of the COVID-19 pandemic. (*Id.* at 20:6–21:3.)

Reach is a Minnesota company that distributes various consumer goods. (Boyd Decl., Ex. 3 ("Tollefson Dep."), at 9:17–22, Sep. 22, 2022, Docket No. 68-2.) Jon Tollefson is the President of Reach, and David Ehrlich is the Vice President of Sales. (*Id.* at 8:21–9:2; Boyd Decl., Ex. 2 ("Ehrlich Dep."), at 8:9–15, Sep. 22, 2022, Docket No. 68-1.) In March 2020, national retailer Five Below, Inc. ("Five Below") contacted Reach and expressed interest in procuring a substantial quantity of hand sanitizer for its stores. (Ehrlich Dep. at 26:13–27:20.) Five Below ultimately placed purchase orders with Reach for 3,696,766

units of hand sanitizer in various sizes. (Boyd Decl., Ex. 5 ("Aff. Cara Binder") ¶ 3, Sep. 22, 2022, Docket No. 65-5.)

Ehrlich began searching for manufacturers that could supply sufficient hand sanitizer to fulfill the Five Below contract. (Ehrlich Dep. at 37:21–41:8.) Reach and Brands had no prior business relationship, but Ehrlich contacted Rubinoff to see if Brands could manufacture hand sanitizer in eight-ounce and two-ounce sizes. (Rubinoff Dep. at 32:13–33:16; 40:10–42:23.) During the initial phone call between Rubinoff and Ehrlich, the two agreed on pricing and terms. (*Id.* at 40:1–9.) Although Brands usually required their customers pay a 50% deposit and the balance upon shipping, Rubinoff and Ehrlich agreed to pay cash on delivery ("C.O.D."). (*Id.* at 35:6–22; 39:1–22.) Reach understood this to mean that it would pay Brands as soon as the trucks containing hand sanitizer were checked in to the Five Below delivery locations. (Tollefson Dep. at 51:21–52:12.)

Following the initial phone call, the parties memorialized their agreement in a Purchase Order. (Boyd Decl., Ex. 8 ("Purchase Order"), Sep. 22, 2022, Docket No. 65–8.) The Purchase Order provides that Brands would produce 500,000 two-ounce units at a price of $0.44 per unit and 500,000 eight-ounce units at a price of $0.69 per unit, totaling $565,000. (*Id.*) Exact shipping locations would be provided at a later time. (*Id.*)

### B. Performance and Breach

Brands began fulfilling Reach's Purchase Order approximately one week after Reach and Brands entered into the purchase agreement. Brands made three deliveries to various Five Below locations pursuant to three individual orders. (*See* Boyd Decl., Exs.

-3-

12–14 ("Individual Orders"), Sept. 22, 2022, Docket Nos. 65-12, 65-13, 65-14.)   The shipments occurred on March 11 (55,296 units), March 12 (63,936 units), and March 16 (13,824 units).  (Boyd Decl., Exs. 9, 10, 11 ("Bills of Lading"), Sept. 22, 2022, Docket Nos. 65-9, 65-10, 65-11.)  A Bill of Lading accompanied each of these shipments that indicated the quantity of each type of hand sanitizer included in the shipment.  (*Id.*)  Five Below accepted each delivery, and Reach was aware that the deliveries occurred.  (Tollefson Dep. at 124:4–12; Boyd Decl., Ex. 15, Sept. 22, 2022, Docket No. 65-15.)  The three shipments totaled $89,072.64.  (Boyd Decl., Ex. 29, Sept. 22, 2022, Docket No. 65-21.)

Five Below submitted payments to Reach on March 16, 17, and 18, 2020, totaling $263,715.84.  (2ⁿᵈ Decl. Felicia J. Boyd, Ex. 1, Oct. 13, 2022, Docket No. 77.)   Despite receiving payment for each of the three shipments from Five Below, Reach did not pay Brands for any of the shipments.  (Tollefson Dep. at 55:3–11; 77:3–23.)

On either March 16 or 17, Rubinoff called Ehrlich to inform him that Brands would stop production on Reach's purchase orders.  (Rubinoff Dep. at 69:17–70:2; 72:13–73:13.)  The parties dispute what was said during the phone call.  Rubinoff testified that the stoppage was due to non-payment for the first three shipments.  (*Id.*)  Tollefson testified that Rubinoff told Reach that it could not delivery any more hand sanitizer because someone had stolen Brands' inventory.[1]  (Tollefson Dep. at 109:25–110:11.)  Reach's

---

[1] At one point in his deposition, Reach's employee testifies that Rubinoff told him that on March 17 "someone broke into the Brands factory and stole" all of the "Visibly Clear" hand

attorneys argue—without any definitive evidence—that Brands had likely found a more lucrative buyer.  (*Cf.* Moore Aff., Ex. H, Sept. 23, 2022, Docket No. 71 (providing Brands' customer sales history for late March and early April 2020).)

In an effort to receive payment, Brands sent Reach an invoice on March 22, 2020, for the three deliveries it had made to Five Below.  (Moore Aff., Ex. F ("DJ Rubinoff Dep."), at 22:23–23:4, Sept. 22, 2022, Docket No. 57-1.)  Reach identified an error in the invoice, so Brands sent a revised invoice on March 23, 2020.  (*Id.* at 23:5–13.)  The revised invoice noted that Reach owed Brands $89,072.64 for the hand sanitizer that Brands had delivered.  (Boyd Decl., Exs. 26–28, Sept. 22, 2022, Docket Nos. 65-18, 65-19, 65-20 (providing the corrected invoice for each shipment).)  Reach never responded to the corrected invoice.  Despite follow-up requests for payment on April 2, 3, 22, and 30, 2020, Reach never paid Brands for the deliveries made to Five Below.  (Boyd Decl., Exs. 30–33, Sep. 22, 2022, Docket Nos. 65–22, 65–23, 65–24, 65–25; Tollefson Dep. at 77:3–23, 78:12–20, 91:20–92:25.)

### C.   Order Cancelled by Five Below

Between March 4 and April 14, 2020, Reach received twenty purchase orders from Five Below.  (Aff. Cara Binder ¶ 3.)  Only one of the twenty purchase orders was satisfied in full by Reach.  (*Id.* at ¶ 9.)  Though Reach claims that Five Below cancelled its contract

---

sanitizer, which is the type of hand sanitizer Reach had ordered.  (Tollefson Dep. at 105:8–107–14; 109:25–110:13.)  Rubinoff has denied making this statement.

due to Brands' failure to provide hand sanitizer, the record indicates that Five Below cancelled various contracts with Reach due to Reach's non-delivery, alleged COVID-19 measures restricting importation from Canada, Five Below store closures, shifting inventory among warehouses, an odor problem with some hand sanitizer, and that Five Below no longer agreed to Reach's C.O.D. payment terms.  (*Id.* ¶¶ 4–8.)

## II.   PROCEDURAL HISTORY

Brands filed this action against Reach for account stated, unpaid goods and services, breach of contract, and unjust enrichment.  (Compl. ¶¶ 7–19, Apr. 21, 2021, Docket No. 2.)   Brands seeks $89,072.64 in damages, which represents the agreed price of the product it shipped to Five Below.[2]  Brands also seeks interest and costs including attorney's fees.  (*Id.* at 3.)

In its answer, Reach asserted counterclaims for breach of contract, breach of an installment contract, and tortious interference with a contract.  (Def.'s Am. Answer and Countercls. at 9–11, June 28, 2021, Docket No. 23.)   Reach initially sought damages of $1,500,000 plus interest and costs including attorney's fees.  (*Id.* at 12.)   Reach has since

---

[2] Brands' complaint technically asks for $89,072.**80**.   However, the record before the Court demonstrates that the value of the hand sanitizer delivered to Reach is $89,072.**64**. (*Compare* Compl. at 3; *with* Boyd Decl., Exs. 26–28 (totaling $89,072.64).)  The Court will construe this discrepancy as a typographical error and assume that Brands seeks $89,072.64.

reduced its claim for damages to $745,276.33. (Reach's Mem. Supp. Mot. Summ. J. at 16, Sep. 22, 2022, Docket No. 56.)

The parties conducted discovery for more than one year before filling cross-motions for summary judgment. (Reach's Mot. Summ. J., Sept. 22, 2022, Docket No. 54; Brands' Mot. Summ. J., Sept. 22, 2022, Docket No. 60.) Brands urges the Court to grant summary judgment in its favor on the parties' competing breach of contract claims. (*See generally* Brands' Mem. Supp. Mot. Summ. J., Sept. 22, 2022, Docket No. 62.) Alternatively, Brands argues the Court should enter summary judgment on its account stated and unjust enrichment claims, and that Reach's tortious interference claim fails as a matter of law. (*Id.*) Reach argues that it is entitled to summary judgment on Brands' contract claim because it was excused from performance when Brands indicated that it would stop delivering hand sanitizer to Five Below. (*See generally* Reach's Mem. Supp. Mot. Summ. J.) Reach further urges the Court to grant summary judgment on its breach of contract counterclaim or, alternatively, its breach of installment contract counterclaim. (*Id.*)[3]

---

[3] In their memoranda in support of their motions for summary judgment, both Brands and Reach conceded some of their claims. Brands admitted that its unpaid goods and services claim is "redundant in light of its claims for account stated and unjust enrichment." (Brands' Mem. Supp. Mot. Summ. J. at 32 n.16.) Reach has similarly conceded that "Brands also seeks summary judgment on Reach's claim for Tortious Interference with Contract and Reach agrees to the dismissal of that claim." (Reach's Mem. Opp. Brands' Mot. Summ. J. at 21 n.20, Oct. 13, 2022, Docket No. 79.) Accordingly, the Court will dismiss both the unpaid goods and services claim and the tortious interference claim without discussing them in detail here.

## DISCUSSION

### I.    STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine dispute of a material fact, and the moving party can demonstrate that they are entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the case and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A court considering a motion for summary judgment must view the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences to be drawn from those facts.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The nonmoving party may not rest on mere allegations or denials but must show, through the presentation of admissible evidence, that specific facts create a genuine issue for trial.  *Anderson*, 477 U.S. at 256.  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Id.* at 252.

### II.    ANALYSIS

As a preliminary matter, the parties dispute which law governs the contract claims. The Court will first address this issue before discussing the merits of the parties' arguments.

### A.  Governing Law

Though the parties agree that Minnesota law should apply to non-contract claims, they dispute what law governs the contractual disputes.  Brands asserts that the United Nations Convention on Contracts for the International Sale of Goods ("CISG") applies, while Reach argues that Minnesota state law applies because the CISG constitutes an impermissible new theory of liability at the summary judgment stage.

The CISG is an international treaty that the United States ratified in 1986 that governs the formation of and rights arising under international sales contracts. *Caterpillar, Inc. v. Usinor Industeel*, 393 F. Supp. 2d 659, 673 (N.D. Ill. 2005).  The CISG applies to international sales contracts between parties that are in signatory companies unless the parties unambiguously disclaim the CISG's applicability.  *Id.*; *Travelers Property Cas. Co. of Am. v. Saint-Gobain Tech. Fabrics Canada Ltd.*, 474 F. Supp. 2d 1075, 1081–82 (D. Minn. 2007) (finding that the CISG governed an agreement between American and Canadian organizations).

The Eighth Circuit has advised that because both the CISG and the Uniform Commercial Code deal with the sale of goods, caselaw interpreting analogous provisions of the Uniform Commercial Code "may also inform a court where the language of the relevant CISG provisions tracks that of the UCC."  *Dingxi Longhai Dairy, Ltd. v. Becwood Tech. Grp. L.L.C.*, 635 F.3d 1106, 1107–08 (8th Cir. 2011) (internal quotation omitted). Matters not expressly settled within the language of the CISG "are to be settled in conformity with the general principles on which it is based."  CISG art. 7(2).

Both the United States and Canada ratified the CISG, and Reach provides no evidence that the parties expressly disclaimed the CISG in their contract formation. Therefore, the CISG governs this transaction.  Though Reach argues that the CISG is an impermissible new theory of liability at the summary judgment stage, that is untrue.  This merely identifies the applicable law governing this dispute.  *Cf. Lumbermen's Mut. Cas. Co. v. Norris Grain Co.*, 343 F.2d 670, 685 (8th Cir. 1965) (finding that a "party relying on the provision of the Illinois law need not expressly plead that Illinois law").  The Court will therefore apply the CISG as it relates to the parties' breach of contract claims and Minnesota law for the non-contractual claims.

### B.      Breach of Contract

Both Brands and Reach assert claims for breach of contract.  Brands argues that Reach was required to pay for each shipment once it was delivered to and received by Five Below per the agreed-upon payment terms.  Reach's failure to submit payment for the first three truckloads was a fundamental breach, thereby entitling Brands to avoid the contract, cancel any additional shipments, and seek damages for the value of the delivered shipments.  Brands asks for $89,072.64—the value of the hand sanitizer it delivered to Five Below.  In contrast, Reach asserts that Brands was required to issue an invoice with each shipment as a condition precedent to payment, so Brands was the first to breach when it refused to deliver more hand sanitizer.  Reach contends it is entitled to the net profit it would have received from Five Below had the order been fulfilled, $745,276.33.

-10-

A breach of contract is "a failure, without legal excuse, to perform any promise that forms the whole or part of the contract." *Lyon Fin. Servs., Inc. v. Illinois Paper and Copier Co.*, 848 N.W.2d 539, 543 (Minn. 2014) (internal citations omitted). Under the CISG, a breach of contract is fundamental "if it results in such detriment to the other party as substantially to deprive [them] of what [they are] entitled to expect under the contract." CISG art. 25. To establish a breach of contract, the claimant must show (1) the formation of a valid contract, (2) the claimant's performance of "any conditions precedent to his right to demand performance" by the other party, and (3) that the other party breached the contract. *Lyon*, 848 N.W.2d at 543. The Court will take each element in turn.

### 1.   Formation of the Contract

The formation of a contract under the CISG largely tracks that of United States contract common law: offer, acceptance, and sufficient definition of essential terms. Under the CISG, there must be an offer that is "sufficiently definite and indicates the intention of the offeror to be bound in case of acceptance." CISG art. 14(1). "A proposal is sufficiently definite if it indicates the goods and expressly or implicitly fixes . . . the quantity and the price." *Id.* Acceptance is established when "[a] statement made by or other conduct of the offeree indicat[es] assent to an offer." CISG art. 18(1). A contract is formed as soon as the offer is accepted. CISG art. 23.

Here, the parties do not dispute the existence of a valid contract and the Court finds that a valid contract existed. Brands and Reach agreed on the essential terms of the

contract—the goods to be produced, unit price, and quantity—in the initial phone call between Rubinoff and Ehrlich.  The essential terms were then memorialized in the Purchase Order.  Although some details were not solidified during the phone call, such as the exact shipping addresses and delivery dates, the parties agreed on the essential terms.  The parties also do not dispute that Reach agreed to pay cash on delivery (C.O.D.) for the hand sanitizer delivered to Five Below.  Because there was a meeting of the minds as to the essential terms of the parties' contract, a valid contract was formed.

### 2. Performance of Conditions Precedent

Reach argues that receipt of an invoice was a condition precedent to it paying Brands for the hand sanitizer.  A condition precedent is an event that must occur before a party is required to perform a certain contractual duty.  *Carl Bolander & Sons, Inc. v. United Stockyards Corp.*, 215 N.W.2d 473, 476 (Minn. 1974).  "[I]f the event required by the condition does not occur, there [is] no breach of contract."  *Capistrant v. Lifetouch Nat'l Sch. Studios, Inc.*, 916 N.W.2d 23, 27 (Minn. 2018) (internal citation omitted).  However, unless the contract language "unequivocally expresses an intent to establish a condition precedent, [a] court will not construe the contract to have a condition precedent."  *Mrozik Constr., Inc. v. Lovering Assocs., Inc.*, 461 N.W.2d 49, 52 (Minn. Ct. App. 1990).[4]

---

[4] *See also Thos. J. Dyer Co. v. Bishop Intern. Engineering Co.*, 303 F.2d 655, 660 (6th Cir. 1962) ("The tendency of the courts is to hold that unless the contract shows clearly that such an action is an express condition, the provision with reference to such act is inserted in order to fix

Here, the Purchase Order did not contain any language expressly establishing invoicing as a condition precedent to receiving payment.  Instead, Reach contends that invoicing is an implied condition precedent to the agreed upon payment terms—cash on delivery ("C.O.D.").  The Court finds this assertion unsupported.

C.O.D. is generally defined as when a "buyer agrees to pay **simultaneously** with delivery and appoints the carrier as the buyer's agent to receive and transmit the payment to the seller."  *C.O.D.*, Black's Law Dictionary (11th ed. 2019) (emphasis added).  There is no mention of invoicing in this definition, and it is also not mentioned in non-legal sources.[5]  This definition aligns with Reach's understanding of their agreement.   Reach's own president testified that:

> The order was for 500,000 two ounce and 500,000 eight ounce…. And we weren't going to pay for that order up front. And Brands wasn't going to wait until truck number 12 before they got paid.  So **the agreement was…[a]s the trucks are received, we're going to go ahead and make payment as soon as they're checked in**.

the time of performance, but not to make the doing of such act or the happening of such event a condition precedent.").

[5] *E.g.,* Cash on Delivery, Encyc. Britannica, https://www.britannica.com/topic/cash-on-delivery (defining C.O.D. as "a common business term indicating that goods must be paid for **at the time of delivery**") (emphasis added); Cash on Delivery, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/cash-on-delivery ("a method of doing business in which a company will transport goods to a customer and take payment for the goods **at the time they are given to the customer**") (emphasis added); Julie Young, Cash on Delivery (COD): What It Is and How It Works, Investopedia (July 11, 2021), https://www.investopedia.com/terms/c/cashondelivery.asp (explaining that one benefit of C.O.D. is that it "facilitates the **immediate payment of goods and services**," and, by consequence, has a shorter timeframe than standard invoicing) (emphasis added).

-13-

(Tollefson Dep. at 52:2–12.)  This testimony indicates that Reach was aware it was under an obligation to pay for the hand sanitizer when it was delivered.  The Court finds that (1) C.O.D. is generally understood to mean payment at the time of delivery, (2) the record indicates that was the parties' understanding at the time of contract formation, and (3) there is no evidence that the parties unambiguously understood receipt of an invoice to be a condition precent to that payment.  The Court therefore cannot hold receipt of an invoice to be a condition precedent to Reach paying for the hand sanitizer.

Moreover, the record indicates that Reach knew—or could easily determine— precisely how much it was required to pay for each shipment.  Each individual shipment was prepared according to an individual order that described the type of hand sanitizer to be produced (i.e., eight-ounce or two-ounce), the quantity of each type, and the per unit price.  (*See* Individual Orders.)  This quantity and delivery information was also reflected in the Bills of Lading.  (*See* Bills of Lading.)  Reach could use simple arithmetic to calculate how much it owed Brands.  At the very least, Reach could have contacted Brands to inquire into how much it owed since it was aware it was under an obligation to pay on delivery.  Any argument that Reach was unaware of how much it owed Brands for each shipment is without merit.

The Court finds that the parties agreed to pay cash on delivery, and that such payment term does not include receipt of an invoice as a condition precedent to

remittance of payment.  Therefore, Reach was under an obligation to pay for the hand sanitizer when Brands delivered it to Five Below.

### 3.   Breach

Having determined that receipt of an invoice was not a condition precedent to Reach's payment for the hand sanitizer, the Court must next consider which party breached the contract first.  The CISG confers certain obligations on both buyers and sellers.  Sellers, of course, have an obligation to deliver the goods being sold.  CISG art. 33.  Buyers then have an obligation to pay for the goods, including "taking such steps and complying with such formalities as may be required under the contract."  CISG art. 54.  Buyers must pay the price on the date fixed or determinable under the contract "without the need for any request or compliance with any formality on the part of the seller."  CISG art. 59.

Failure by the buyer to perform its obligations under the contract or CISG entitles the seller to exercise certain remedial rights, including the ability to declare the contract avoided if the buyer fundamentally breaches the contract or CISG.  CISG art. 64.  The other party may "declare the contract avoided," but the CISG does not require declaration or other notice to be made in any specific manner.  *See* CISG art. 64.

Here, the record indicates that Brands was performing in accordance with its obligations under the contract.  The Bills of Lading show that three shipments were made to Five Below, and that each shipment contained the types and quantity of hand sanitizer ordered.  Reach was under an obligation to pay for the hand sanitizer upon delivery, and

it did not.  This breach was fundamental because Brands was entitled to expect payment under the parties' C.O.D. agreement.  Accordingly, it was well within Brands' right to avoid the contract, as Rubinoff did when he called Reach and informed it that Brands would not produce any more hand sanitizer.

Moreover, the plain language of the CISG obligates Reach to make payment "without the need for any request or compliance with any formality on the part of the seller."  CISG art. 59.  Reach has produced no evidence that demonstrates it undertook any effort to make payment.  Instead, Reach advances the theory that because Brands did not enter the purchase order into its own internal order tracking system, Reach is somehow not obligated to pay Brands—an argument that leaves the Court scratching its head.  Brands was not required to request payment or comply with any formality as it relates to receiving payment.  "Any formality," of course, includes Brands' own internal order tracking and invoicing processes.  Thus, the Court finds that Brands was in full compliance with the agreement and Reach breached when it failed to remit payment.

As it relates to breach of contract, the Court finds that (1) a valid contract was formed, (2) invoicing was not a condition precedent, and (3) because Reach failed to remit payment after receiving the product, it committed a fundamental breach of the contract and Brands was within its legal rights to cease performance and avoid the contract as to the remaining unshipped product.  Therefore, the Court will grant summary judgment in favor of Brands on the parties' competing breach of contract claims.

### C.      Breach of Installment Contract

In the alternative, Reach asserts a claim for breach of an installment contract. Chapter V § 1 of the CISG specifically deals with installment contracts, which is a contract requiring or authorizing the delivery of goods in separate lots, or payments in separate increments, to be separately accepted.  *Contract, Installment Contract*, Black's Law Dictionary (11th ed. 2019).  The CISG informs that if one party does not perform their obligations for an installment, and that failure to perform "gives the other party good grounds to conclude that a fundamental breach of contract will occur with respect to future instalments," the nonbreaching party may declare the contract avoided for future installments.  CISG art. 73(2).  A party may also suspend performance of their obligations under the installment contract if it "becomes apparent that the other party will not perform" its obligations under the contract.  CISG art. 71(1).  This is commonly referred to as anticipatory breach.

Assuming the parties had an installment contract, Brands could reasonably conclude that Reach's failure to pay for the first three shipments would result in a failure to pay for any future shipment.  Therefore, Brands had a right to suspend performance under the installment contract.  The Court will therefore grant summary judgment in favor of Brands on Reach's breach of an installment contract claim.

### D.      Unjust Enrichment and Account Stated

In the alternative to its breach of contract claim, Brands asserts unjust enrichment and account stated.  Unjust enrichment is an equitable doctrine "that allows a plaintiff to

recover a benefit conferred upon a defendant when retention of the benefit is not legally justifiable." *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 838 (Minn. 2012), *superseded by statute on other grounds as recognized in Hall v. Plainview*, 954 N.W.2d 254 (Minn. 2021). A party bringing an unjust enrichment claim has the burden to show that the other party received something of value for which they "in equity and good conscience should pay." *ServiceMaster of St. Cloud v. GAB Business Services, Inc.*, 544 N.W.2d 302, 306 (Minn. 1996) (internal quotation and citation omitted). Unjust enrichment is only available when there is no contract remedy. *Caldas*, 820 N.W.2d at 838.

In contrast, the doctrine of account stated "comes into being through an acknowledgement or an acquiescence in the existing condition of liability between the parties." *Meagher v. Kavli*, 88 N.W.2d 871, 879 (Minn. 1958). The law will imply a promise to pay a balance if one party renders an account stated and the other party acquiesces to that amount. *Id.* In other words, "[a]n account stated is a manifestation of assent by a debtor and creditor to a stated sum as an accurate computation of an amount due the creditor." *Am. Druggists Ins. v. Thompson Lumber Co.*, 349 N.W.2d 569, 573 (Minn. Ct. App. 1984). Like the doctrine of unjust enrichment, account stated is merely an alternative to a contract claim. Minnesota courts have barred account stated claims where there is no dispute that a written contract governs the disputed account. *See HomeStar Property Solutions, LLC v. Safeguard Properties, LLC*, 370 F. Supp. 3d 1020, 1030

(D. Minn. 2019) (finding that the unjust enrichment claim failed as a matter of law where a written contract governed the relevant subject matter and there were no facts distinguishing the unjust enrichment claim from the breach of contract claim).

Here, the parties had a valid contract. Therefore, the equitable doctrines of unjust enrichment and account stated are barred. The Court will grant summary judgment for Reach on Brands' unjust enrichment and account stated claims.

### E.    Attorney's Fees

Lastly, Brands asserts that it is entitled to an award for costs and attorney's fees, plus interest. Under the CISG, "[d]amages for breach of contract by one party consist of a sum equal to **the loss**, including loss of profit, **suffered by the other party as a consequence of the breach**." CISG art. 74 (emphasis added). The CISG instructs that damages may not be more than that which are reasonably foreseeable. *Id.* The CISG further states, "[i]f a party fails to pay the price or any other sum that is in arrears, the other party is entitled to interest on it, without prejudice to any claim for damages recoverable under article 74." CISG art. 78.

Whether the CISG contemplates the inclusion of attorney's fees in the measure of damages is an issue of first impression in the Eighth Circuit. Though the Seventh Circuit has held that the CISG Article 74 does not include an award of attorney's fees, the Court finds the Seventh Circuit's analysis unpersuasive and will not apply it here. In *Zapata Hermanos Sucesores, SA v. Hearthside Baking Co., Inc.*, the Seventh Circuit reversed the district court's award for attorney's fees on the notion that "[t]here is no suggestion in

the background of the Convention or the cases under it that 'loss' was intended to include attorneys' fees, but no suggestion to the contrary either."   313 F.3d 385, 388 (7th Cir. 2002).   Because there "are no 'principles' that can be drawn out of the provisions of the Convention for determining whether 'loss' includes attorneys' fees," the Seventh Circuit decided that "the matter must be left to domestic law."   *Id.*

The Court declines to apply *Zapata's* analysis of the CISG as it relates to attorney's fees.   The Seventh Circuit itself indicated, and this Court agrees, that the "vast majority" of the Contracting States to the CISG adhere to the "English rule" that the loser pays.   *Id.* at 389.   Thus, it follows that the CISG would reflect the dominant approach to attorney's fees.   Moreover, other circuits have explained that Article 74 is "designed to place the aggrieved party in as good a position as if the other party had properly performed the contract."   *Delchi Carrier SpA v. Rotorex Corp.*, 71 F.3d 1024, 1029 (2nd Cir. 1995) (internal citation omitted).   This would likely include payment of attorney's fees.

Moreover, from a policy perspective, the Court recognizes the incongruency in *Zapata* as it relates to uniformity and "the observance of good faith in international trade."   CISG art. 7(1).   Whereby an American company that prevails on its breach of contract claim under the CISG in a Canadian court may be awarded attorney's fees, a Canadian company must bear its own costs after prevailing in an American court.   To hold that attorney's fees are excluded from damages in breach of contract claims under the

CISG adjudicated in a United States court would have a deleterious effect on international business.

The Court will therefore construe Article 74 of the CISG to include the possibility of reasonable attorney's fees. In certain situations, attorney's fees are a reasonably foreseeable loss that stems from breach of contract. The fees paid to attorneys in a breach of contract case are certainly a loss suffered by a party "as a consequence of the breach." CISG art. 74. Should parties to a contract for the international sale of goods elect to exclude attorney's fees from the measure of damages, they are free to do so in an express provision—which the Court will enforce.

Here, it was entirely foreseeable that were Reach to not pay for the goods delivered to Five Below, and then ignore Brands' efforts to recover payment, that litigation would ensue. The action was commenced by Brands for the sole reason that Reach had refused to pay, and thus litigation expenses were a direct, foreseeable result of Reach's breach. Were the Court to decline to award attorney's fees, the result would evade all notions of justice to which American courts so ardently hold. The three shipments that Brands made totaled $89,072.64. Five Below paid Reach $263,715.84 for those shipments, but Reach has not paid Brands. After engaging in expensive litigation as a direct consequence of Reach's breach of contract, Brands' potential profits likely have eroded quickly and substantially. To decline Brands' request for attorney's fees would be

patently inequitable.  The Court will therefore award Brands reasonable attorney's fees and costs, plus interest.

To recover attorney's fees and costs, Brands must file a motion pursuant to Federal Rule of Civil Procedure 54(d) within 14 days from the date of this order.  The motion should include any necessary affidavits and briefing for the Court to determine the reasonable amount of fees and costs.

## CONCLUSION

The Court concludes that Reach's failure to pay for the three shipments delivered to Five Below constitutes a fundamental breach of the contract.  Thus, Brands was wholly within its rights to suspend performance and avoid the contract.  The Court will therefore grant summary judgment for Brands on the parties' contract law claims.  Because they are barred by the existence of a valid contract, the Court will grant summary judgment for Reach on Brands' unjust enrichment and account stated claims.  The Court will also dismiss Brands' unpaid goods and services claim and Reach's tortious interference with contract claim.  Lastly, the Court will award Brands reasonable attorney's fees and costs, plus interest.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.  Plaintiffs' Motion for Summary Judgment [Docket No. 60] is **GRANTED in part** as it pertains to Plaintiff's Breach of Contract Claim, Defendant's Breach of Contract Claim, Defendant's Breach of Installment Contract Claim, and Defendant's Tortious Interference with Contract Claim, and **DENIED in part** as it pertains to all other claims;

2.  Defendant's Motion for Summary Judgment [Docket No. 54] is **GRANTED in part** as it pertains to Plaintiff's Unjust Enrichment Claim, Plaintiff's Account Stated Claim, and Plaintiff's Unpaid Goods and Services Claim, and **DENIED in part** as it pertains to all other claims;

3.  Plaintiff is awarded $89,072.64, plus pre-judgment and post-judgment interest, attorney's fees, and costs.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:  April 11, 2023
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge

-23-